through the Undergraduate Study Recourse in the College of Law. May it please the Court, I'm Thomas Mosley, counsel for the petitioner. The Board of Immigration Appeals got it wrong on this second bite of the apple that they had in the government's continuing effort to deport a cooperator back to the place where he faces death threats from the person against whom he cooperated. I mean, this is particularly true under the controlling principles that a Board of Immigration Appeals decision can only be defended or affirmed on the basis of a reasoning adopted. But when you turn to what is the ultimate conclusion of the Board's decision, that's on page eight of the decision, it's clear in what they say that they simply got it wrong. They say that their analysis is additional aggravating factors that will take this case beyond the established rule that simple assault isn't a crime involving moral turpitude. And the additional aggravating factors, they say, are an intent to interfere with an official proceeding. Now, an intent to interfere with an additional proceeding is simply not a necessary element for conviction under 1513. It is under 1505, for example, but not here. So that aggravating factor just simply isn't present, and that's simply wrong. The second aggravating factor, they say, that should take the case over the line into a crime involving moral turpitude is that of causing injury to a protected class of people. Now, if you again apply the categorical approach here, which focuses on the minimum element or excuse me, the minimum means necessary for conviction, it's a threat to personal property. And so, again, those two factors simply aren't present in this conviction under the categorical approach. So, again, the decision can be a threat. Why isn't it a threat to personal property with the specific intent to retaliate against the witness? Yes, but what the court did, excuse me, what the board did was to say that what brought it over was not just that, not the intent to retaliate, but an intent to interfere with the proceeding. And that's simply not an element for conviction. And that's, and in fact, you know, even the government concedes in page 40 of its brief that intent to, that this is the board's ultimate conclusion. The board is relying upon, unfortunately, fortunately, the board is relying upon elements that simply aren't elements of the underlying statute for conviction. Well, 1513B, right? Right. 1513B does not have intent to interfere with an official proceeding as an element for conviction. But you do agree that there is an intent to retaliate against a witness. I do. I do agree. I do agree that that's true. But you have a specific intent component and you have a protected category component. That, yes, that's true. But what the board did in its briefing, Judge Nathan, is to go beyond that and say that, OK, you have these elements. They're somewhat similar to simple assault. But what brings this case over the line into a crime involving moral turpitude, they say, are the aggravating factors of an intent to interfere with an official proceeding. And that's not an element of the underlying, that's not an element of 1513. So, I mean, that's, again, a Board of Immigration Appeals decision can be definitive. You addressed Loper in your reply papers. How should we be thinking about our review of this agency decision in a post-Chevron world? Well, I think it doesn't change that, Judge Livingston, it doesn't change the fact that you can only affirm on the basis of the, excuse me, of the board's reasoning adopted. Where I made the Loper-Bright argument was in connection with, and again, arguments on replies are disfavored, was in the fact that while the immigration statute specifically says that conspiracy on grounds of inadmissibility for crime involving moral turpitude is included, the ground of deportability with which we deal is limited only to, is limited to the substantive offenses. It's conviction of a crime involving moral turpitude. It doesn't say conspiracy to commit a crime involving moral turpitude. And I think Loper-Bright's elimination of Chevron deference under those circumstances provides us an additional argument for reversal here. Moreover, if I may just turn, if you do not accept my arguments with respect to crime involving moral turpitude, I wanted to turn briefly to relief under the Convention Against Torture. And first of all, I don't think the prior panel, which I believe Judge Livingston, you were a part, really had occasion to address relief under the Convention Against Torture because you remanded it on the issue, you remanded it on the issue of removability itself. So relief under the Convention Against Torture did not logically come into play. Moreover, the very same day that the panel decision came down, the circuit came down with the Manning decision, which said that it was the Department of Homeland Security's burden to show that an individual could relocate within, could relocate. So I mean, I think here we have a situation where, and it's significant that the Immigration Court found Mr. Zizek credible in his testimony and that he had adequately provided corroborating evidence. So where I think that they, where the decision, I think, is not supported by substantial evidence and is really infected by legal error is on the issue about the ability of whether the people who threatened to kill him twice would be able to find him when he came back. And they made, here, I think the Board of Immigrants, excuse me, the immigration judge overlooked the venerable Hillman Doctrine that when somebody says something, that they're going to do something, that that's evidence that they will, that's evidence they will do it. And in this case, the individuals, the threat specifically said, we're waiting for you, threats that were, excuse me, that were postmarked from polling. So I think under these circumstances, the fundamental legal error here in the Immigration Court's decision was this idea that Mr. Zizek could go to another country within the EU. And I think that misunderstands the function of a relief under the Convention Against Torture, which is to prevent you from being sent to the country where you will be tortured, killed in this case. So I would urge that if you don't accept my argument with respect to crime involving moral turpitude and the other arguments that the case be remanded on the issue of relief under the Convention Against Torture. Thank you. We will hear from the government. Thank you, Mr. Mosley. Good morning, your honors, and may it please the court. Excuse me, Imran Zadeh for the Attorney General. At the outset, I'll note that there are only two issues that are properly before this court. The CIMT issue, crime involving moral turpitude, and the related vagueness challenge. Petitioner tries to invoke some other issues as being part of this appeal that this court has already addressed in its prior remand order. Now, we rest on our brief as to why those issues are beyond the scope of this court's review. But of course, we are prepared to answer any of this panel's questions should it have any. So the issues that I plan otherwise to focus primarily on are mainly the CIMT, crime involving moral turpitude issue, and then to a lesser extent, the unconstitutional vagueness challenge. Now, on the CIMT issue, the board here found correctly that this offense, federal witness retaliation, is a crime involving moral turpitude by applying its general definition, which requires two things, two elements, reprehensible conduct, and a culpable mental state. Now, the board focused first on culpable mental state, which we all know both on board and court precedent, the sort of mental state or mens rea is the hallmark of moral turpitude. Turpitude inheres in the intent. These are principles we commonly focus on. And the board said that it is significant that this statute has two mentis rea. First, knowingly engaging in conduct that causes or threatens to cause harm to a person or property. And second, doing so with the specific intent to retaliate against someone for participating as a witness in official proceedings or as a government informant. So you have knowledge and you have specific intent. And the board found this significant here because this court has already deferred to the board's decision to equate knowledge or intent with the sort of vicious motive or corrupt mind associated with the CIMT. And because the board has separately said, as to specific intent crimes in particular, that crimes committed with a specific intent are more likely to be CIMTs, more likely to be crimes involving moral turpitude, because they have the sort of depraved mind or evil intent that reflect moral turpitude. So we think on culpable mental state, there's no question you have a crime that reflects moral turpitude here. And then you turn to the conduct. So that second element under the board's definition is reprehensible conduct. And again, this statute requires knowingly threatening, causing or threatening property damage or bodily injury. Now, the minimal conduct here, which we must apply in the categorical approach, is threats to property. And the board found threats to property is certainly turpitudinous when paired with the aggravating factors that are present in this statute. Is that the way to do it? Or should we look at those two things separately? We focus first on the depraved mind, the mental intent, and then look at the conduct. And you could say the minimal conduct is simply a threat to damaged property. Well, Your Honor, you look at them together. I think there's two separate parts to your question. One of the aggravating factors is conduct related, so the protected persons. So right there, you're already on conduct. But as to I think what you're getting at, which is can you sort of circle back to the culpable mental state when you're looking at aggravated factors, you certainly can. As the board has said in its decisions, in its assault line of cases, and other lines of cases where they talk about whichever of the two factors you're relying on, whether culpable mental state or conduct, there commonly end up being other factors in the statute. So you might be looking at a culpable mental state crime, and the board will have said in its jurisprudence, but does it involve injury, or does it involve a protected class of persons, or vice versa, where you're focusing on the conduct and you bring the specific intent into it. It's not a hard science, so it is difficult sometimes because it feels circular. We just talked about culpable mental state. Now I'm talking about reprehensible conduct, and I'm bringing it back. But that is based directly on the board's jurisprudence. And again, you do have one of the aggravating factors here being in the conduct category, and that's the protected class of persons. So we think the board certainly got it right its second time around. It relied on its general definition. I will very briefly talk about the unconstitutional vagueness challenge, which is just to say that this court has already foreclosed this challenge, or held that it is foreclosed in this recent decision in Vasquez. The court held that this challenge is foreclosed by the Supreme Court's decision in DeGeorge. Vasquez is significant in particular here because this court has already— because the arguments a petitioner raises here are the exact same ones that were raised in Vasquez, which is that the recent Supreme Court—relatively recent Supreme Court decisions in Johnson and DeMaia somehow provide a basis for reconsidering DeGeorge. This court in Vasquez said they very clearly do not provide a basis for reconsidering DeGeorge and that DeGeorge is holding saying that unconstitutional— or that crime involving moral turpitude is not unconstitutional vague. It's still good law. Circuit courts do not have the prerogative to overrule or to not follow that law just because some lines of the reasoning may have been undercut, and there is no such suggestion here. So we think Vasquez very clearly controls. As we said, I rest on the briefs as to why the other issues the petitioner now raises with regard to cat protection, admission, and the 212H waiver are outside the scope of this court's review, but of course we're prepared to answer any questions if the panel has them. Otherwise, we ask that the court deny this petition for review. Thank you. The government, I submit, misapprehends in its argument the ultimate conclusion of the board at issuing the case essentially was this analogous to simple assault or not, and in order to bring it over the line into crime involving moral turpitude in its meshing of intent and its meshing of mens rea with conduct, the board fell into serious error, and that serious error, again, to repeat, was that they said that what brings it over the line, the aggravating factor, is an intent to interfere with an official proceeding, which isn't a necessary element for conviction here under the categorical approach, and the government concedes that under the categorical approach, the minimum conduct is a threat to injure tangible property, but the board relied upon causing injury to a protected class of people as the second factor that brings this over into the crime involving moral turpitude area. Finally, with respect to relief under the Convention Against Torture, precedent going back to Judge Hand says that while the case is simply not a straitjacket to bind the court when there have been more recent developments, and here we have the Manning case which says that the burden is upon the Department of Homeland Security to establish that a person could relocate itself. That and I submit the underlying error with respect to not following the Hillman Doctrine and also not the misuse of the Department of State report, which doesn't contradict Mr. Zizak's informed lay opinion that the police in Poland would have no interest in protecting them and he would lose the protection of the FBI. Under those circumstances, if the court does not accept my crime involving moral turpitude, I urge that this case be remanded on Convention Against Torture. Thank you both and we'll take the matter under advisement.